### 74566. CRONAN v. RICKETT et al.
(357 SE2d 841)

DEEN, Presiding Judge.

In December 1978 appellant Cronan, who is right-handed, received a gunshot wound in his left hand while performing his duties as a City of Atlanta police officer. His little finger and the adjacent metacarpal structure required amputation. In December 1980 he appealed to the Police Pension Fund (the Board), chaired by appellee Rickett, for a disability pension, which was granted effective April 14, 1981.

In notifying Cronan (pursuant to Ga. Laws 1945, pp. 1067, 1072) that he had been awarded the pension sought, the Board informed him that he would be required to submit to physical examinations at the end of each of the next three years. In July 1983 the Board notified him that he would be required to undergo another physical examination at the end of two years "to determine if you are able to return to work." He was reexamined in June 1985, and the examining physician found that appellant's disability at that time was minimal, and that he was capable of performing all the duties of his former position except a narrow range of activities associated with the function of a "street cop." Cronan was thereupon notified, in December 1985, that

he had been found to be "no longer totally and permanently disabled"; that he would be offered a desk job at his old pay, position, and status; and that his pension would cease effective January 1, 1986. Cronan declined the offer of reinstatement, and on March 21, 1986, after a hearing, the Board informed him that, because he was no longer classified as disabled and had refused the offer of a suitable job, his pension would be discontinued forthwith.

Cronan then sought judicial review in the Fulton County Superior Court, and on August 25, 1986, that court, applying the appellate standard of review, found that the evidence supported the Board's decision. In the interim between the commencement of his pension in 1981 and the initiation of the proceedings below, Cronan had been employed first as a polygraph examiner and then as a night watchman.

Cronan appeals from the superior court's order, enumerating as error the court's rulings regarding the following particulars: (1), (3), (4), the Board's allegedly erroneous interpretation of the Police Pension Act and the alleged failure of the evidence regarding his continuing ability *vel non* to support the Board's decision; (2) the alleged impropriety of the Board's "modification" of its original award in the light of the principle of *res judicata*; (6) the alleged lack of evidence as to the equivalency of Cronan's present job as a night watchman and his former position as a police officer; and (5) alleged violations of the Fourteenth Amendment to the United States Constitution and Art. I, Sec. I, Par. I of the Constitution of Georgia. *Held*:

Ga. Laws 1945, p. 1072, provides as follows: "If the [Board's] determination be that the applicant is totally and permanently disabled, he shall be retired subject, however, to the following conditions: (a) the Board . . . shall have the right to at least once a year require the pensioner to submit to a medical examination for the purpose of determining whether or not the pensioner has sufficiently recovered from his disability and is able to return to his former position; (b) if the Board, after such examination, determines that the pensioner is not actually totally and permanently disabled but is able to return to his former position or employment he occupied at the time of his retirement and such employment and status as to position, pay and service credit at the time of retirement is offered to such pensioner and he takes the former position or fails or refuses to take such offer, then the payment of such disability pension shall cease." Instructive on this point are analogous provisions of OCGA § 47-17-81. Subsection (a) of this statute requires that "[a]ny dues-paying member who is rendered totally and permanently disabled by disease or injury so as to be unable to perform substantially all of the duties of the position to which the member was regularly assigned when the disability originated or so as to be unable to engage in any occupation or gainful

employment for which the member is reasonably suited by virtue of the member's background, training, education, and experience shall be entitled to disability benefits . . . for life or until the member's disability ceases. . . ." Subsection (e) of this Code section requires that "[o]nce each year during the first five years following the commencement of disability benefits under this Code section, and once in every three-year period thereafter, the board may require a disability beneficiary . . . to undergo a medical examination . . . by physicians designated by the board . . . The designated physicians shall report to the board, following each such examination, the current status and condition of the recipient's disability." Subsection (f) provides, in pertinent part, that "[a] disabled member's disability benefits shall cease;

"(1) Upon his return to gainful employment with the employer for which he worked at the time his disability originated; . . .

"(3) If the board determines on the basis of any medical examination that the member has sufficiently recovered from his disability so as to again be able to perform substantially all of the duties of the position to which he was regularly assigned when the disability originated, or so as to be able to engage in an occupation or gainful employment for which he is reasonably suited by virtue of his background, training, education, and experience. . . ." Code section 47-17-101 states that "[a]ll rights and benefits under this chapter shall be subject to future legislative change or revision, and no beneficiary shall be deemed to have any vested right to any annuities or benefits under this chapter."

Ga. Laws 1981, p. 4381, provides at Section 3 (b), p. 4383, the relevant definition of "Disability . . . incurred in line of duty." This definition employs language consistent with that of the cited provisions of Ga. Laws 1945 and OCGA § 47-17-81: "total and permanent disability to pursue one's regular, assigned or comparable duties with such city. . . ."

Our examination of the record of the instant case and of the relevant Acts and Code sections indicates that, contrary to appellant's contention, the Board was precisely following the statutory mandate in requiring the June 1985 examination and, upon receiving the designated physician's report that Cronan had retained only minimal disability, in offering to place him in a job "comparable" to that which he formerly held, and at the same "employment and status as to position, pay and service credit." The superior court, sitting as an appellate body, could properly have done nothing other than affirm the Board's decision.

Given the evidence and the relevant law, we find none of appellant's enumerations of error to have merit.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED MAY 14, 1987 —
REHEARING DENIED MAY 27, 1987 —

*J. Michael Walls*, for appellant.
*David D. Blum*, for appellees.